## Richmond.

### CARPENTER v. GARRETT AND ALS.

December 17.

### Absent, *Moncure*, P.

1. To entitle a husband surviving his wife to courtesy in her real estate four things are necessary : 1st, marriage ; 2d, actual seizin in the wife ; 3d, issue born alive ; 4th, death of the wife.

2. Actual seizin means possession of the freehold by the *pedis positio* of one's self or one's tenant or agent ; or by construction of law, as in case of a Commonwealth's grant, a conveyance under the statute of uses ; or of grant or devise where there is no actual adverse occupancy.

3. Seizin in law is a right to the possession of the freehold where there is no adverse occupancy thereof.

4. G died in 1845 intestate leaving a widow and eight children, all but one infants. By the law as it then was (Code of 1819, ch. 107, § 2) until dower was assigned to the widow she was entitled to remain in the mansion house, and the messuage and plantation thereto belonging, without being charged with paying the heir any rent for the same. Dower was never assigned to the widow ; and she remained in possession of the mansion house and plantation until her death in 1866, cultivating and renting out the land in her own name, and using and disposing of the profits at her own pleasure ; her children being with her and supported by her until their death or marriage. H, one of the daughters, married C ; had issue born alive, and died in the lifetime of her mother. Upon a bill by C to have courtesy in his wife's share of the land—HELD : The wife did not have seizin in fact in the land in her lifetime, and C was not entitled to courtesy in it.

This was a suit in equity in the circuit court of Loudoun county, brought by Marshall W. Carpenter against J. F. Garrett and others to recover an interest in a tract of land

which belonged to Silas Garrett, deceased, at his death. The plaintiff married Huldah, one of the daughters of Silas Garrett, who, after giving birth to two living children, departed this life; and he claimed to be entitled as tenant by the courtesy in his late wife's share in the land. The court dismissed the bill, and the plaintiff obtained an appeal to this court. The case is stated by Judge *Christian*, in his opinion.

*Harrison & Powell*, for the appellant.

*J. W. Foster*, for the appellees.

CHRISTIAN, J. This case is before us on appeal from a decree of the circuit court of Loudoun county.

The record presents for our decision a single question, and that is purely a question of law arising upon the following conceded facts:

Silas Garrett died intestate in April, 1845, seized in fee of certain tracts of land in the county of Loudoun. The matter of controversy in this cause relates to only one of said tracts, that known as the "Home Place," on which the decedent resided at the time of his death, and containing at the time when the supposed rights of the appellant are alleged to have accrued, 205¾ acres.

The decedent left a widow (Jemima Garrett) and eight children—two sons and six daughters. At the time of his death all of his children (save one) were infants. One of these daughters (Huldah) married Carpenter in June, 1857, and died in May, 1862, after having given birth to two living children. Prior to her death three other children of Silas Garrett died unmarried, intestate and without issue. Mrs. Garrett, the widow, died in 1866. Her dower in the estate of her husband was never assigned to her. She lived on the "Home Place," occupying the mansion house, and

managing and controlling the farm and receiving the rents and profits, from the death of her husband to the time of her death, in 1866. She either farmed the land herself, disposing of the crops and other products, or rented it out to tenants, who made contracts with her and paid her the rents. At one time she leased the land to a tenant for five years or during her natural life, and at the end of the lease renewed it for two years longer. These contracts of lease were made with her alone, and the rents paid to her. Her children, during all this time (and among them the wife of appellant, up to 1857, when she was married) lived with her, and the products of the farm and the rents and profits were used in the joint support of mother and children. Immediately after the marriage of the daughter (Huldah) with Carpenter, she left with her husband and was no longer an occupant of the "Home Place" with her mother, but was there after her marriage only as a visitor at one time (when she gave birth to her first child) for a period of two months, but still as a visitor, and not as a member of her mother's family, as she had been before marriage.

In 1868, six years after the death of his wife, and two years after the death of the widow, Mrs. Garrett, Carpenter filed his bill in the circuit court of Loudoun county against the heirs of Silas Garrett, the appellees here, in which he claimed that he was entitled to a life estate in one undivided fifth part of the 205 acres known as the Home Place, as tenant by the courtesy. The answer of the heirs deny that he was entitled as tenant by the courtesy to any part of the land; and deny that his wife ever had such seizin in the land as would entitle her husband to courtesy therein. The answer alleged affirmatively that after the death of Silas Garrett there was an agreement between his heirs and widow that the widow should hold the real estate (not necessary to pay debts) for her life, and that no one of the heirs of Silas Garrett should be entitled to any

part of the real estate, or the rents, issues and profits thereof, and that under this agreement the said widow took possession of said realty of her husband at his death, and by consent and agreement of all his children continued in possession thereof till her death in 1866; and that the heirs of said Garrett never had any actual seizin of said land or any part thereof.

The cause came on to be heard upon the bill and answer and depositions of witnesses, and the circuit court, being of opinion that the complainant was not entitled to an estate by the courtesy, in any part of the land of which Silas Garrett died seized, dismissed the complainant's bill with costs. It was from this decree that an appeal was allowed by one of the judges of this court.

It is not necessary to go into any detailed examination of the evidence of the witnesses who were examined in the cause. It is proper to remark, however, that there is no proof in the cause to establish any binding contract between the widow and the heirs, to permit her to remain in exclusive possession of the land, and receive the rents and profits thereof during her life. The testimony of the single witness of a verbal agreement between Mrs. Garrett and her children is altogether too vague and uncertain upon which to found any decree. But if such an agreement as is affirmatively alleged in the answer was positively and specifically proved, it could not bind the infant heirs; and there is indeed no sufficient proof that any such agreement was ever made. Without any discussion, therefore, of the evidence, it is sufficient to rest our decision upon the undisputed and conceded facts in the cause as above stated.

The sole question therefore we have to determine is whether upon these facts the appellant Carpenter is entitled to a life estate as tenant by the courtesy in one undivided fifth part of the tract of land known as the "Home Place," of which the decedent Silas Garrett died seized.

Now four things are requisite to constitute an estate by the courtesy—viz: marriage; *actual* seizin of the wife; issue born alive; and death of the wife. In the case before us we have *three* of the essential elements requisite to an estate by the courtesy. There was a lawful marriage—there was issue of the marriage born alive—and the wife is dead. The sole question is, does the second named requisite element exist? Was there in this case upon the conceded facts *actual seizin* of the wife of any part of the lands descended from her father, Silas Garrett? He died in the year 1845. The law then in force with respect to the widow's dower is found in 1 Rev. Code, ch. 107, § 2. It contains the following provision : " And till such dower shall be assigned it shall be lawful for her to remain and continue in the mansion house, and the messuage or plantation thereto belonging, without being chargeable to pay the heir any rent for the same ; any law, usage or custom to the contrary in any wise notwithstanding."

Under this statute upon the death of her husband, Mrs. Garrett, by operation of law, was, until dower was assigned her, entitled to hold possession of the mansion house, and receive the rents and profits of the messuage and plantation known as the " Home Place," without being chargeable to pay rent to the heirs. This right and possession extended unquestionably to the whole. Judge Lomax, in construing this act, after commenting upon the widow's rights and privileges under the English law, says : " In Virginia the privilege included the mansion house and plantation thereto belonging. This was understood to include every part of the tract of land on which the mansion house stands, although the same should not be a part of the plantation or enclosed land ; and would include the woods, if it were a part of the land on which the mansion house stood. In the enjoyment of this privilege (conferred by statute) the possession of the widow was so exclusive of the heir that he

could not maintain trespass in the woods so situated against a stranger." 1 Lomax Dig. 92 (mem.); *Latham* v. *Latham*, 3 Call. 181. See also *Moore* v. *Gilliam*, 5 Munf. 346 ; and *Pitzer* v. *Williams*, 2 Rob. R. 241, in which last named case it was held by this court that a widow to whom dower had not been assigned, and who continued in the possession of the mansion house and plantation thereto belonging, must be considered as *proprietor* of the land in the meaning of the statute respecting writs of *ad quod damnum;* and a motion by the heir, who resided on the land with his mother, to dismiss the proceedings because notice was not served on him as one of the proprietors of the land, was overruled.

These authorities establish the proposition that until dower is assigned the widow in this case held exclusive possession of the land on which the mansion house stood, by operation of law. The conceded facts above cited show that dower was never assigned to her, and that she not only had possession of the land known as the Home Place by operation of law under the statute above quoted, but that she had the actual possession and exclusive control and management of the estate, selling the products of the farm, leasing it out to tenants who contracted with her alone, and paid the rents to her, and indeed directing, managing and controlling the property as if it was her own. Her children (and among them Mrs. Carpenter up to the time of her marriage with the appellant) lived with their mother, and no doubt mother and children received a common support from the products and the rents and profits of the Home Place.

Now the question is, Did Mrs. Carpenter ever have such *actual seizin* in any part of the land as entitles the husband to his claim of courtesy therein ? *Seizin in law* of the wife is not sufficient to invest the husband with an estate as tenant by the courtesy. Nothing short of seizin in fact or *actual seizin* will affect this.

*Seizin in fact,* or indeed, as Lord Coke calls it, or ACTUAL SEIZIN, means possession of the freehold by the *pedis positio* of one's self or one's tenant or agent, or by construction of law, as in case of a commonwealth's grant, a conveyance under the statute of uses, or doubtless of grants or devise, where there is no *actual adverse* occupancy. Seizin in law is a *right to the possession of the freehold,* when there is no adverse occupancy *thereof,* such as exists in the heir after descent of lands upon him before actual entry by himself or his tenant. 2 Minor's Inst. 107, citing 3 Th. Coke Litt. and other authorities there cited. See also 4 Kent's Com., 486 n. (a); 1 Lomax Dig. 5–64.

Now it is plain that the widow's entry on and enjoyment of the premises in the case before us, in pursuance of the provision of ch. 107, § 2, 1 R. C. 1819, was a lawful possession, not indeed of the freehold, but of the land. It was a lawful possession held by her not under the heirs of her husband, but in a certain sense adversely to them. She had the actual possession to which she was entitled by operation of law, and until dower was assigned to her could hold the same against the heirs, and was not accountable to them for rents and profits of any part of the land on which the mansion house stood. Such possession, therefore, was not held under the heir of her husband, but adversely to them. The daughter, Mrs. Carpenter, had *seizin in law* only, but not in fact. The mother not having possession of the *freehold,* the daughter had an unquestioned right to the immediate possession of the freehold, and the land also, upon complying with the terms imposed by law, of assigning dower to her mother. But dower never having been assigned by her or her co-heirs, I think it is plain that the mere residence of the daughter on the place, in the family of her mother before marriage, or her sojourning with her mother as a member of the family after marriage, and not claiming as heir, precludes any *actual seizin* on her

part. Especially is this true under the facts conceded in this case. Mrs. Garrett not only had the lawful possession by operation of law, but she continued to the day of her death to exercise the exclusive control and management of the estate without any claim on the part of any of the heirs to rents and profits, or to hold the land as heirs, and without exercising the right which they all and any one of them had, to assign dower to her. Mrs. Carpenter, either before marriage or after, could easily have converted her *seizin in law* into *seizin in fact* by having dower assigned to her mother. If this had been done her husband would have been entitled to a life estate in one-fifth of the "Home Place" as tenant by the courtesy. But this not having been done, there was no *actual seizin* in the wife, and consequently no courtesy in the husband.

I am of opinion, therefore, that there is no error in the decree of the circuit court of Loudoun, and that the same must be affirmed.

ANDERSON and BURKS, J's, concurred in the opinion of *Christian,* J.

STAPLES, J., concurred in the results.

DECREE AFFIRMED.